IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

KEVIN NANJI,

       Plaintiff,

                                          Civil Action No. AW-04-2635

v.

NATIONAL GEOGRAPHIC SOCIETY,

       Defendant.

## MEMORANDUM OPINION

Plaintiff Kevin Nanji ("Plaintiff" or "Nanji"), an inmate convicted of involuntary servitude and illegal harboring in violation of several federal statutes, brings this libel action against Defendant National Geographic Society ("Defendant" or "National Geographic"). Nanji takes issue with a descriptive reference published by National Geographic as part of a two-year investigation into global human trafficking. In particular, Nanji contends that National Geographic printed false statements alleging that Nanji was convicted of "raping" a fourteen-year-old girl from Cameroon. Currently pending before this Court is National Geographic's Motion to Dismiss, or in the alternative, Motion for Summary Judgment [14]. The Court has reviewed the pleadings and applicable law and has determined that a hearing is unnecessary. See Local Rule 105(6) (D. Md. 2004). For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

## FACTUAL & PROCEDURAL BACKGROUND

I.    FACTUAL BACKGROUND

The following facts are undisputed. National Geographic, one of world's largest not-for-profit educational and scientific institutions, has been publishing its namesake magazine as its official journal for 117 years. In Spring 2001, National Geographic embarked on a worldwide



investigation into human trafficking to alert its readers that, despite having been outlawed worldwide, slavery continues to exist. Following a two year investigation, National Geographic published a feature story, in its namesake magazine's September 2003 edition, on the phenomenon of global human trafficking entitled "21st Century Slaves". The featured story explored slave labor in India, the forced prostitution of Eastern European women in Israel, slave trafficking in Bosnia, agricultural slavery in Florida, and child prostitution in the western United States.

In addition to highlighting human trafficking overseas, National Geographic desired to highlight some success stories of law enforcement working on combating domestic human trafficking incidents in the United States. One of the "sidebar" articles, accompanying the featured story in the September 2003 edition of National Geographic, was a list of four successful prosecutions of human trafficking by the United States Department of Justice ("DOJ"). The sidebar stated, in pertinent part:

> Stopping Traffic
>
> Countries that actively prosecute trafficking in human beings as a serious crime: 25
>
> Prison sentences imposed on some convicted traffickers in the U.S. in 2002:
>
> Louisa Satia and Kevin Waton Nanji, 9 years each for luring a 14-year-old girl from Cameroon with promises of schooling, then isolating her in their Maryland home, raping her, and forcing her to work as their servant for three years.

*Stopping Traffic*, National Geographic, Sept. 2003, at 16 (the "Sidebar").

In composing the SideBar, Mary McPeak ("McPeak"), a research editor for National Geographic, spoke with several DOJ officials about their efforts to combat domestic human slavery, and the DOJ provided McPeak with three reports. One piece of information, provided by the DOJ Civil Rights Division, was an official six-page report summarizing recent DOJ successes in human

trafficking, which said this of Nanji's victim:

> Once the young girl arrived here, she was isolated in the defendants' home and forced through threats, *sexual assaults*, and physical abuse to work for them for several years as their personal servant.

Report, "U.S. Dep't of Justice Human Trafficking Cases: Charged, Convicted, or Sentenced post-January 2001 (Updated Sept. 26, 2002)" at 3-4 (the "Human Trafficking Report") (emphasis added).

National Geograpic also obtained two press releases issued by the DOJ pertaining to conviction and sentencing of Nanji and his wife. The first press release was issued on December 20, 2001, the day Nanji was convicted, and the government stated: "[E]vidence presented at trial showed that Nanji sexually abused the girl during the 3-year period that the girl worked for the couple." The second press release, issued on March 27, 2002, the day Nanji and his wife were sentenced to prison. In the second press release, the government stated: "In addition to these acts of violence against the victim, Kevin Nanji sexually abused the girl during the 3-year period that the girl worked for the couple."

After reviewing these documents and other newspaper accounts about the Nanji trial, National Geographic drafted the SideBar summarizing Nanji's sentencing, as well as three other examples of human trafficking prosecutions in the United States.

II.   PROCEDURAL HISTORY

Nanji and his wife, Louisa Satia, were charged in a superseding indictment with the following crimes:  1) holding the victim, Roseline Odine ("Rose"), in involuntary servitude, in violation of 18 U.S.C. § 1584; (2) conspiring to harbor Rose and to induce her to enter the United States, in violation of 18 U.S.C. § 371; (3) harboring Rose for the purpose of commercial advantage and

3

private financial gain, in violation of 8 U.S.C.[1] On December 20, 2001, following a three week jury trial, the jury found both defendants guilty on all counts of the superseding indictment.

During sentencing, the government provided abundant evidence that Nanji repeatedly sexually assaulted and molested his 14 year old victim. The government described the evidence as follows:

> During the almost three years that Rose was forced to work for the defendants, defendant Kevin Nanji sexually abused her. Specifically, Nanji began sexually abusing Rose starting from the first month that she arrived in the United States, a practice that he continued during the three years that Rose worked for the family. On the first such occasion, Rose was sleeping on a couch in the kitchen, and she awoke to Nanji climbing on top of her and trying to kiss her. Nanji tried to force himself on her and said that she was just trying to "make her feel like a woman." During the almost three years that Rose worked for the defendants, Nanji repeatedly molested Rose, doing such things as trying to force himself on her, grabbing her breasts and touching her between her legs. He repeatedly told her that he would make her feel like a woman, and that he would not get her pregnant. These sexual assaults would either occur at nighttime, or during the day, when either no one else was in the house or the children were sleeping. Nanji repeatedly tried to take Rose's clothes off, and Rose started to wear jeans to bed so that it would be more difficult for Nanji to take her clothes off. On one such occasion, Nanji showed Rose a condom and told her that he would not get her pregnant; during that incident, Rose struggled so hard to get away from Nanji that they both fell on the floor. On another occasion, Nanji exposed his genitals to Rose. On yet another occasion, after a communion party at codefendant Vivian Satia's house, Nanji entered the room in which Rose was sleeping and sexually assaulted her, including trying to force his head between her legs; Rose tried to push Nanji away and ultimately, Nanji left the room only when his brother, Thaddeus "Teddy" Nanji, returned home a short while later. Rose described this incident to her friend Christina Elangwe as the time that "Teddy saved her." Nanji abused Rose repeatedly in this fashion. Rose told Christina Elangwe and Louisa Satia's brother, Benedict Satia, about those sexual assaults.

Before sentencing Satia and Nanji, this Court stated:

> . . . I don't believe that [Nanji] was a minimal nor minor participant, and I say that for this reason. I can't minimize the sexual assaults and advances that I heard during

---

[1] Additionally, Satia was charged with: (1) conspiring to commit marriage fraud and (2) conspiring to commit passport fraud both in violation of 18 U.S.C. § 371.

> the testimony. I can't minimize it. I can't. That was part and parcel of the involuntary servitude . . . And, as I said, *I can't minimize the sexual assaults that the jury accepted. That was the jury's decision that part and parcel of the enslavement was the sexual abuse and advances.*

Transcript of Sentencing at 72-73 (emphasis added). Both Satia and Nanji received a 108 month sentence.

Satia and Nanji appealed their convictions and sentences to the Fourth Circuit. Appellee's brief, with citations to the trial testimony, the government stated the facts about Nanji's sexual assaults on Rose as follows:

> During the almost three years that Rose was forced to work for the defendants, Nanji sexually abused her, with the first sexual assault occurring within the first three weeks of Rose's arrival in the United States. On the first occasion, Rose, who was sleeping on a couch in the kitchen, awoke to Nanji climbing on top of her and touching her "between [her] legs." Rose tried to push Nanji off of her. While Rose struggled, Nanji told Rose that he was just trying to make her feel like "a woman." Over the following three years, *Nanji repeatedly assaulted Rose, including trying to have sexual intercourse with her, grabbing her breasts, touching and inserting his finger in her genitals, forcibly performing oral sex on her*, and exposing himself to her and trying to kiss her. Nanji also repeatedly tried to take Rose's clothes off, causing Rose to start wearing tight jeans to bed so that it would be difficult for Nanji to accomplish his goal.

Brief of Appellee at 6-7 (emphasis added). The Fourth Circuit affirmed Satia's and Nanji's convictions and sentences. See United States v. Satia, 68 Fed. Appx. 428 (4th Cir. 2003). United States Supreme Court denied Nanji's petition for a writ of certiorari. Nanji v. United States, 540 U.S. 1022 (2003).

On August 12, 2004, Nanji brought this civil action against National Geographic, alleging that National Geographic's September 2003 issue printed libelous and defamatory statements, that defamed Nanji's character, based on erroneous claims that Nanji was convicted of "rape.

On April 18, 2005, National Geographic filed a Motion to Dismiss, or in the alternative,

Motion for Summary Judgment. This motion has been fully briefed, and an opinion is now issued.

## STANDARD OF REVIEW

Defendant has moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). When deciding a motion under Rule 12(b)(6), a court must determine "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). The court must accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. Id. The court should not dismiss a complaint for failure to state a claim, unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Generally, if materials "outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . ., and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b); see Gay v. Wall, 761 F.2d 175, 178 (4th Cir. 1985). As the defendant points out, however, the nature of the documents presented here are such that this court may properly consider them in the context of a Rule 12(b)(6) motion to dismiss, *without* converting the motion to one for summary judgment. Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss under [Rule 12(b)(6)], we are not precluded in our review of the complaint from taking notice of items in the *public record* .") (emphasis added); Kostrzwewa v. City of Troy, 247 F.3d 633, 644 (6th Cir. 2001) ("a district court may consider public records in deciding a motion to dismiss without converting the motion to one for summary judgment.").

Defendant has submitted various public records along with its motion.[2] Accordingly, this Court will treat Defendant's motion as a Motion to Dismiss pursuant to Rule 12(b)(6).

## DISCUSSION

National Geographic posits three arguments for dismissing Nanji's complaint as a matter of law. National Geographic argues that (1) the challenged text is substantially true; (2) the challenged text is a fair and accurate account of official government pronouncements; and (3) Nanji, as a convicted felon who smuggled into this country, enslaved, and repeatedly sexually assaulted a juvenile girl, is libel proof. For the forthcoming reasons, this Court finds the first two arguments of National Geographic sufficient to justify dismissing Nanji's complaint.[3]

I.   Failure to State a Claim Because Statement is Substantially True

To establish defamation in Maryland, a plaintiff must prove (1) that the defendant made a defamatory statement to a third person; (2) that the statement was false; (3) that the defendant was legally at fault for making the statement; and (4) that the plaintiff thereby suffered harm. Rosenberg

---

[2] In particular, Defendant has submitted a transcript of Satia's and Nanji's criminal sentencing hearing, a copy of the National Geographic article on "21st Century Slaves," the DOJ Human Trafficking Report, a copy of Defendant-Appellee's Brief to the Fourth Circuit in Satia's and Nanji's criminal conviction and sentencing appeal, the government's "Memorandum in Aid of Sentencing," two DOJ press releases on the Nanji and Satia criminal case dated December 20, 2001 and a March 27, 2002, the government's consolidated response to Nanji and Satia's motions in limine in the criminal case, and Nanji's "Renewed Motion for Judgment of Acquittal."

[3] For National Geographic's third argument it contends that Nanji is libel proof. However, National Geographic acknowledges that no case in the Fourth Circuit or in Maryland state courts have adopted this doctrine. Accordingly, this Court will not extend the libel-proof doctrine to this case absent some Fourth Circuit or Maryland authority.

v. Helinski, 616 A.2d 866, 871 (Md. 1992), *cert denied*, 509 U.S. 924 (1993).[4] Defendant challenges the second prong of this four part test, *i.e.*, whether Plaintiff alleges that Defendant published a false statement of fact.

For the purpose of a defamation claim, a statement is only false if it is "not substantially correct." Spencer v. Henderson-Webb, Inc., 81 F.Supp.2d 582, 597 (D. Md. 1999) (citations omitted). Minor inaccuracies do not amount to falsity provided that the substance or gist is justified. Id.

Nanji appears to allege that National Geographic's September 2003 edition published defamatory false statements. In particular, Nanji objects to National Geographic's printed statement of "raping [the victim]" on the basis that "this allegation is false, pernicious and damaging inasmuch as [Nanji and Satia] had not been convicted for rape." Nanji's allegation fails to state a claim of defamation because the gist of National Geographic's published statement is substantially true.

In determining whether allegedly false statements are substantially accurate, a court must consider the statements in their entirety. Heath v. Hughes, 233 Md. 458, 464 (1964). The text of the challenged Sidebar statement states, in pertinent part:

> Prison sentences imposed on some convicted traffickers in the U.S. in 2002:
>
> Louisa Santia and Kevin Waton Nanji, 9 years each for luring a 14-year-old girl from Cameroon with promises of schooling, then isolating her in their Maryland home, raping her, and forcing her to work as their servant for three years.

Had the Sidebar expressly stated that Nanji was convicted of raping his victim, then Nanji would have successfully stated a claim. However, the plain language of the Sidebar does not state that

---

[4] In a diversity action, the law of the forum state applies. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Fortress Re, Inc. v. Central Nat'l Ins. Co., 766 F.2d 163, 165 (4th Cir. 1985).

8

Nanji was *convicted* of rape. Instead, the Sidebar suggests that Nanji was *sentenced* to nine years incarceration for, among other things, "raping her." Indeed, the first sentence of the Sidebar uses the language of *sentences* imposed on persons convicted as *traffickers*, which would imply to a reasonable observer of the Sidebar that Nanji was convicted of a *trafficking* offense and not of rape. Therefore, the plain text appears to shed light on the meaning of the term "raping," as used in this context, as simply an affirmation that rape was one of the facts that merely underlay the sentence imposed upon Nanji. Viewed from the perspective of "readers of common and reasonable understanding," Goldsborough v. Orem & Johnson, 103 Md. 671, 682 (1906), the Sidebar article clearly conveys the message that "rape" was merely a fact of the case rather than the underlying conviction.

This Court's textual interpretation is supported by public records. In its post-trial Sentencing Memorandum, the government summarized the trial evidence of violent sexual assaults by stating:

> During the almost three years that Rose worked for the defendants, . . . Nanji repeatedly molested Rose, doing such things as trying to force himself on her, grabbing her breasts and touching her between her legs . . . On yet another occasion, . . . Nanji entered the room in which Rose was sleeping and sexually assaulted her, including trying to force his head between her legs . . . Nanji abused Rose repeatedly in this fashion.

Additionally, at Nanji's sentencing hearing, this Court left no doubt as to what the jury believed about Nanji:

> I don't believe that [Nanji] was minimal or minor participant, and I say that for this reason. I can't minimize the sexual assaults and advances that I heard during the testimony. I can't minimize it. I can't. That was part and parcel of the involuntary servitude . . . And, as I said, *I can't minimiz the sexual assaults that the jury accepted. That was the jury's decision that part and parcel of the enslavement was the sexual abuse and advances.*

Furthermore, during Nanji's appeal of his convictions, the government stated in its brief to the

9

Fourth Circuit that during the three years the victim worked for Nanji and Satia:

> Nanji repeatedly assaulted Rose, including trying to have sexual intercourse with her, grabbing her breasts, touching and inserting his finger in her genitals, forcibly performing oral sex on her, exposing himself to her and trying to kiss her.

Moreover, in the DOJ's official report that National Geographic relied upon in writing the Sidebar text, the DOJ noted that the victim "was isolated in [Nanji's and Satia's] home and forced through threats, *sexual assaults*, and physical abuse to work for them for several years as their personal servant." Finally, two DOJ press releases, again relied upon by National Geographic in writing the Sidebar text, noted that the evidence at the criminal trial showed that Nanji "sexually abused" the victim. Thus, the abundance of sexual misconduct evidence in the public records unequivocally shows that Nanji's sexual assaults and advances upon his victim were part and parcel of the involuntary servitude for which Nanji was convicted.

Liberally construing Nanji's pro se complaint, his libel claim could be construed as a contention that he was harmed by National Geographic's use of the term "raping" instead of the more technically precise term, such as "sexual assault" or "sexual abuse.' See De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) ("[T]he allegations in pro se complaints should be liberally construed.") (citations omitted). Even under such a liberal construction, National Geographic's use of the term "rape" as shorthand for sexual misconduct, *i.e.*, "sexual assault" or "sexual abuse," does not render the article inaccurate.

In this vein it is worth noting that a long line of cases holds that "technical errors in legal nomenclature in reports on matters involving violation of the law are of no legal consequence." See Seymour v. A.S. Abell Co., 557 F.Supp. 951, 956 (D. Md. 1983); see e.g., Simonson v. United Press, Intern. Inc., 654 F.2d 478, 482 (7th Cir. 1981) (defendant substituted the word "rape for the

technically correct term "sexual assault"); Orr v. Argus Press Co., 586 F.2d 1108, 112 (6th Cir. 198), *cert denied*, 440 U.S. 960 (1979) ("swindle" substituted for "defraud"); Lambert v. Providence Journal Co., 508 F.2d 656, 659 (1st Cir. 1975); *cert denied*, 423 U.S. 828 (1975); Dostert v. Washington Post, 531 F.Supp. 165 (N.D. W. Va. 1982) ("guilty" substituted fro "nolo contendere"); Piracci v. Hearst Corp., 263 F.Supp. 511, 515 (D. Md. 1966), *aff'd*, 371 F.2d 1016 (4th Cir. 1967) ("possession of marijuana" substituted for "delinquency due to the act of possessing marijuana"); Read v. Phoenix Newspapers, Inc., 819 P.2d 939 (Ariz. 1991) ("firing a gun" substituted for "exhibiting a gun.").

This rule also applies in cases involving reports of sexual misconduct. In Simonson, a 15-year-old boy was sentenced after pleading no contest to a charge of second-degree sexual assault, defined under Wisconsin law as having "sexual contact or sexual intercourse with another without consent of that person by use of threat or force." 654 F.2d at 481. A local paper reported on the sentencing hearing, and the Associated Press and United Press International wrote national dispatches based on the article stating that the boy "raped" a female student. The Seventh Circuit disagreed, and found that "[t]he dispatches were in no manner made false by substituting the word in common usage for an exact legalism." Id. at 482.

As applied here, this Court is careful to ensure that not every error or inaccuracy is actionable under the First Amendment. See Hopkins v. Keith, 348 So.2d 999, 1002 (La. Ct. App. 1977) ("In reporting matters of public interest involving legal and judicial proceedings and records some errors and inaccuracies are bound to occur in the use of technical terms.") (citations omitted). In referring to Nanji's sexual acts as "raping," National Geographic's Sidebar appears to be simply converting exact legalism into common parlance that could be understood by its national and worldwide

readership base. Such a construction comports with the media being allowed "breathing space" in order to avoid a "chilling effect" on the exercise of First Amendment rights. Id. Hence, this Court finds the gist of National Geographic's Sidebar statement characterizing Nanji's actions as "rape" substantially accurate under common parlance.[5]

In short, the text of National Geographic's Sidebar article, along with numerous references to sexual assaults in the public record, demonstrate that National Geographic's was substantially correct that rape was a factor that the jury considered in convicting Nanji of involuntary servitude. Because National Geographic's published statements that Nanji "raped" his victim were substantially correct, Nanji has failed to state a claim for defamation.

II.   Failed to State a Claim Because Challenged Text is Fair & Accurate

Even assuming the Sidebar statement of "rape" is not substantially true, Nanji has failed to state a claim of defamation because National Geographic fairly and accurately published information based on government reports or actions. See Reuber v. Food Chemical News, Inc., 925 F.2d 703, 712 (4th Cir. 1991) ("A fair report privilege shields news organizations from defamation claims when publishing information originally based upon government reports or actions.").

Under Maryland law, earlier cases suggested that the fair report privilege "operated only when the report is fair, accurate, and made without malice." Rosenberg v. Helinski, 616 A.2d 866,

---

[5] National Geographic also argues that its Sidebar statement of "rape" is substantially true for a third reason — that Nanji's conduct is properly classified as "rape" in numerous states. See e.g., AIDS Counseling & Testing Ctrs. v. Group W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990). Because this Court agrees that Nanji's sexual conduct here could have been punishable as "rape" in a number of states and other countries, a more specific statement that Nanji's acts as 'sexual assault" or the like would not have had a differing effect on the reader than did the National Geographic text.

873 (Md. 1992). The modern view, however, discards the search for malice.[6] Id. Therefore, under the modern view of Maryland law, a publication falls within the fair report privilege if the defendant demonstrates that the publication is a substantially fair and accurate report. Id.

As applied here, this Court finds that National Geographic's published Sidebar statement was fair and accurate. As previously mentioned, National Geographic's reporting was consistent with judicial findings and statements concerning Nanji's conduct. Furthermore, National Geographic's reporting of the information contained in these government documents was fair and accurate. The DOJ Human Trafficking Report stated that the victim was subject to "sexual assaults." Two DOJ press releases recounted the evidence that Nanji "sexually abused" the victim. Based on these reports, National Geographic wrote that "raping" was one of the facts underlying the sentence imposed on Nanji after his conviction for involuntary servitude and harboring. Accordingly, National Geographic is entitled to the fair report privilege, and Nanji's defamation claims are therefore dismissed.

## CONCLUSION

For the aforementioned reasons, this Court GRANTS National Geographic's Motion to Dismiss Nanji's complaint, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief may be granted. An Order consistent with this Opinion will follow.

June 28, 2005
Date

Alexander Williams, Jr.
United States District Judge

---

[6] Even assuming malice must be shown, Nanji has not pled that National Geographic acted with actual malice. Therefore, the fair report privilege applies, and accordingly, Nanji's defamation claims fail to state a claim of defamation.

13